**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DR. PAGE CAROL WOODS and DR. NATHANIAL WOODS, JR., individually and o/b/o N.W., a minor, | No. 4:25-CV-01562 |
| Plaintiffs, | (Chief Judge Brann) |
| v. | |
| WILLIAMSPORT AREA SCHOOL DISTRICT, RICHARD CASCHERA, in his individual and official capacity, DR. JUSTIN ROSS, in his individual and official capacity, MR. MATTHEW FISHER, in his individual and official capacity, MS. ALICIA DIFFER, in her individual and official capacity, and JOHN/JANE DOES 1-5, | |
| Defendants. | |

**MEMORANDUM OPINION**

**MARCH 27, 2026**

## I.    BACKGROUND

On November 30, 2025, Plaintiffs Dr. Page Carol Woods and Dr. Nathanial Woods, Jr., individually and on behalf of minor N.W. (collectively, "Plaintiffs") brought an amended seven-count complaint against Defendants Williamsport Area School District ("the District"), Richard Caschera ("Caschera"), Dr. Justin Ross

("Ross"), Matthew Fisher ("Fisher"), Alicia Differ ("Differ"), and John/Jane Does 1-5 ("John/Jane Does") (collectively, "Defendants").[1]

Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The motion is now ripe for disposition; for the reasons that follow, it is granted in part and denied in part. Plaintiffs will be provided leave to amend the complaint.

## II.   DISCUSSION

### A.   Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[2] and *Ashcroft v. Iqbal*,[3] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[4] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity"

---

[1]   Doc. 20 (Amend. Compl). Plaintiffs amended their complaint once with leave of court after Defendants' first motion to dismiss was filed. Docs. 1, 11, 17, 19.

[2]   550 U.S. 544 (2007).

[3]   556 U.S. 662 (2009).

[4]   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[5]

### B.    Facts Alleged in the Amended Complaint

The facts alleged in the amended complaint, which this Court must accept as true for the purposes of this motion, are as follows.

N.W. was a minor and a rising senior in the District, attending Williamsport High School ("the High School").[6] The District is a governmental entity that provides K-12 educational services.[7] The District hired Caschera to teach in the High School, despite his lack of prior teaching experience or teaching credentials.[8] Caschera did have his temporary teaching certificate, "which the District went to great lengths to shoehorn the eligibility for temporary certification . . . [because] the District did not believe they could qualify Defendant Caschera for a long term certification."[9]

Caschera taught in the Homeland Security program of the Career and Technical Education program.[10] This course description advertised that the class substance would relate to emergency services, fire protection, and emergency situations, and noted that students would receive training in law enforcement techniques including a variety of hands-on skills.[11]

---

[5]    *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).
[6]    Doc. 20 at ¶ 12.
[7]    *Id.* at ¶ 13.
[8]    *Id.* at ¶¶ 15, 21-24.
[9]    *Id.* at ¶ 24.
[10]   *Id.* at ¶ 25.
[11]   Doc. 24-2 (Exhibit A).

N.W was a student in Caschera's class. On May 28, 2025, a series of events transpired, leading to the instant lawsuit. On that day, the class had a written test.[12] N.W. asked repeatedly to use the restroom, but Caschera denied his request each time.[13] N.W. put his head down on his desk, and Caschera instructed another student to place smelling salts under his nose.[14] N.W. has "several significant allergies."[15]

When N.W. did not swiftly raise his head, Caschera instructed other students to secure N.W. to a medical backboard.[16] The students did so using a strap at or just below the neck, and then Caschera turned the backboard so N.W. was vertical.[17] N.W. had to stand on his toes to avoid the strap pressing on his throat for several minutes, and was only released when he feigned coughing.[18] When releasing N.W., Caschera asked if N.W. would stay awake.[19] Caschera sent N.W. out of class "for asking to use the restroom," and N.W. received no credit on the exam administered that day.[20] Thirteen to fifteen students witnessed the entire event.[21]

---

[12]   Doc. 20 at ¶ 27.
[13]   *Id.* at ¶ 28.
[14]   *Id.* at ¶¶ 29-30.
[15]   *Id.* at ¶ 31. Plaintiffs do not allege that the smelling salts actually triggered or affected N.W.'s allergies.
[16]   *Id.* at ¶¶ 32-33.
[17]   *Id.* at ¶ 34. The parties dispute the medical propriety of strapping a patient into a backboard in such a way.
[18]   *Id.* at ¶¶ 38-40.
[19]   *Id.* at ¶ 41.
[20]   *Id.* at ¶ 43.
[21]   *Id.* at ¶ 64.

Differ, the Associate Principal, called N.W.'s mother, Dr. Page Carol Woods, and reported that N.W. was required to serve detention for being sent out of class.[22] Dr. Woods explained to Differ what had happened in class, and Differ was "astonished."[23] Differ looped in Fisher, and they had several meetings with Dr. Woods.[24] Differ and Fisher spoke with Caschera, who "did not see the wrong in what he did," and admitted that he was holding N.W. to a higher standard than his peers.[25] N.W. apologized to Caschera, and Dr. Woods asked Fisher to have Caschera apologize to N.W. as well; Fisher said this was reasonable, and asked Caschera to do so.[26] Caschera declined to apologize at this time.[27]

The next week, Caschera told N.W. he would have until a certain time to complete the make-up test, but then moved the deadline up earlier, forcing N.W. to complete the test before the end of class.[28] Dr. Woods followed up with Fisher and Differ, asking why the test deadline was moved, and again requesting an apology from Caschera.[29]

The District scheduled a meeting with Fisher, Caschera, and N.W.[30] Caschera did not have a reason for expediting the make up test, but gave "somewhat of an

---

[22]  *Id.* at ¶ 45.
[23]  *Id.* at ¶ 46.
[24]  *Id.* at ¶¶ 46-47.
[25]  *Id.* at ¶ 48.
[26]  *Id.* at ¶¶ 49-51.
[27]  *Id.* at ¶ 56.
[28]  *Id.* at ¶ 52.
[29]  *Id.* at ¶ 54.
[30]  *Id.* at ¶ 56.

apology[y]" regarding the events of May 28.[31] Specifically, Caschera described that he went into what he called "scenario mode" when he called N.W.'s head down,[32] seemingly referring to the "scenarios" that he had his class partake in as part of their instruction.[33] During this meeting, Caschera became "irate and emotional."[34]

After this meeting, Dr. Woods and her husband, Dr. Nathaniel Woods, Jr. (collectively, "the Woods"), requested a meeting with Fisher and Caschera.[35] When they arrived at the meeting, Fisher pulled the Woods aside and told them that "Caschera had only been teaching 15-20 days," and Ross, the principal, asked the Woods to "give [Caschera] a chance."[36]

Plaintiffs then filed the instant suit for seven counts: deprivation of fourth amendment rights under § 1983, a *Monell* claim for the same, violation of the Pennsylvania Constitution for unreasonable search and seizure, state created danger, battery, intentional infliction of emotional distress, and false imprisonment.

### C.    Analysis

Plaintiffs bring a variety of claims, as noted above, both federal and state; Defendants move to dismiss all claims.[37] First, however, a preliminary matter: Plaintiffs name as "Defendants" several individuals against whom no counts are brought.[38]

---

[31]    *Id.* at ¶¶ 55, 57.
[32]    *Id.* at ¶ 57.
[33]    Doc. 25 at 11; Doc. 24 at 17 n.4.
[34]    Doc. 20 at ¶ 59.
[35]    *Id.* at ¶ 60.
[36]    *Id.* at ¶¶ 61-62.
[37]    Doc. 24 at 4-5.
[38]    Doc. 20 at 3 (naming parties) and Counts I-VII.

Plaintiffs bring claims only against Caschera and the District[39] but also list as Defendants the following individuals: Dr. Justin Ross ("Ross"), the principal of the High School; Fisher, the Director of Career and Technological Education at the High School with administrative responsibilities; Differ, the Associate Principal at the High School; and John/Jane Does 1-5.[40]

Plaintiffs claim, without citation to any legal authority, that dismissing the defendants with no claims against them would "elevate[] form over substance and ignore[] the function of pleadings under Rule 8."[41] Plaintiffs' argument is misguided. This is not a case where Plaintiffs have proceeded with counts brought against unnamed parties, seeking to later identify those parties. Instead, Plaintiffs have named parties but state no counts against them, hoping to find some evidence in discovery which would somehow support additional claims.[42] This strategy is insufficient to satisfy Rule 8(a)(2)'s requirements, specifically that of a "short and plain statement of the claim" sufficient to put named defendants on notice of what may be asserted against it.[43]

---

[39]  Doc. 20 at Counts I-VII.

[40]  Doc. 20 at 3 (naming parties).

[41]  Doc. 25 at 14.

[42]  Doc. 25 at 14 (arguing that the inclusion of the "supervisory officials" as named defendants "preserves Plaintiffs' ability to develop evidence concerning supervisory liability, policymaking authority, and municipal ratification, issues and supporting evidence that are uniquely within Defendants' control and typically developed through discovery"). The Court will not endorse such a maneuver, and it is telling that Plaintiffs cite no other cases to have done so. None exist.

[43]  FED. R. CIV. P. 8; *Chamberlain v. Giampapa*, 210 F.3d 154, 160 (3d Cir. 2000) (describing Rule 8's purpose as "to provide notice of the claims and defenses of the parties").

As it stands, the named Defendants without counts against them have no way of knowing which, if any, claims they should respond to, or how to answer Plaintiffs' Amended Complaint. Accordingly, all parties without claims against them shall be dismissed from Plaintiffs' Amended Complaint, including Ross, Fisher, Differ, and John/Jane Does 1-5. This leaves Defendants District and Caschera, as the only Defendants against whom Plaintiffs specifically complain.

Turning now to Plaintiffs' claims against the District and Caschera. I will first analyze Plaintiffs' federal claims, then turn to Plaintiffs' state law claims.

### 1.    Federal Claims - Counts I, II, and IV

Plaintiffs bring three claims arising under federal law: a § 1983 claim for deprivation of Fourth Amendment rights against the District and Caschera ("Count I"); a similarly styled *Monell* claim against the District ("Count II"); and a State Created Danger claim against the District ("Count IV"). I address each in turn.

### a.    Count I - § 1983 against Caschera

In Count I, Plaintiffs bring a 42 U.S.C. § 1983 ("§ 1983") claim purportedly against both the District and Caschera for deprivation of the Fourth Amendment's prohibition on unreasonable search and seizure.[44] However, "[a] school district is a municipality for the purposes of a § 1983 claim,"[45] and it is well established that the

---

[44]    Doc. 20 at Count I.

[45]    *E.N. v. Susquehanna Tp. Sch. Dist.*, No. 1:09-CV-1727, 2011 WL 3608544, at \*5 (M.D. Pa. July 5, 2011) (citing 53 Pa.C.S.A. § 7101's definition of municipality which includes school districts and *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006)).

only avenue to sue a municipality under § 1983 is through a *Monell* claim.[46] Accordingly, any standalone § 1983 claim against the District outside of the *Monell* styling in Count II is dismissed. I will therefore analyze only Caschera's liability for the Count I § 1983 claim.

"Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States."[47] While it does not create new rights, § 1983 "provides a remedy for the violation of a federal constitutional or statutory right" where a plaintiff can demonstrate that "defendants, while acting under color of state law, deprived him of a right secured by the Constitution or the laws of the United States."[48]

Plaintiffs argue that Caschera's actions were violative of the Fourth Amendment's prohibition against unreasonable seizures.[49] Defendants argue that, first,

---

[46] *See, e.g., Arcuri v. Cnty. Of Montgomery*, No. 20-5408, 2021 WL 1811576, at *6 n. 11 (E.D. Pa. May 6, 2011) ("Monell provides the only mechanism to state a claim under Section 1983 against municipal entities"); *Monell v. Dept. of Social Servs. Of City of New York*, 436 U.S. 658, 694-95 (1978).

[47] *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005).

[48] *Id.* Defendants do not argue that Caschera was not acting "under color of state law," disputing only whether there was any deprivation of rights. Doc. 24 at *passim*, 13-14.

[49] Doc. 25 at 7-13. In the Amended Complaint, Plaintiffs also make reference to the Fourteenth Amendment. Doc. 20 at 10. Similarly, in brief, Plaintiffs reference the use of physical force and cite to *Gottlieb v. Laurel Highlands Sch. Dist.* to argue that excessive force is another avenue to recovery. Doc. 25; 272 F.3d at 171-73. However, excessive force claims are analyzed through the Fourteenth Amendment's "shocks the conscience" standard, separate and removed from the Fourth Amendment. *Gottlieb*, 272 F.3d at 172-73; *Tucker v. Sch. Dist. of Phila.*, No. 19-889, 2019 WL 3802066, at *2 (E.D. Pa. Aug. 13, 2019).

In brief, Plaintiffs do not pursue the Fourteenth Amendment, instead arguing their claims through a Fourth Amendment lens. Nor do Plaintiffs address the applicable standard for

the § 1983 claim against Caschera is in his "official" capacity and, thus, duplicative of the *Monell* claim in Count II.[50] Second, Defendants argue that Caschera is protected under the qualified immunity doctrine, which requires violation of a clearly established constitutional right.[51] Defendants' first argument is without merit; their second, unpersuasive at this stage.

First, Plaintiffs are not bringing a § 1983 claim in an official capacity against Caschera, and, therefore, Count I is not duplicative of Count II.[52] "Unlike official capacity claims . . . individual capacity claims are not duplicative of Monell claims against a locality."[53] Accordingly, the Court will not dismiss Plaintiffs' § 1983 claims against Caschera on such a basis.

Second, Defendants' qualified immunity argument fails. Plaintiffs pursue a Fourth Amendment underlying violation providing § 1983 liability, namely, that Caschera's actions constituted an unlawful seizure of N.W.'s person.[54] As Caschera was a teacher exercising discretionary acts, Plaintiffs do not dispute the applicability of

---

excessive force under the Fourteenth Amendment. Accordingly, the Court will not latch onto Plaintiffs' passing references and set out their arguments for them. Should Plaintiffs seek to bring a claim under the Fourteenth Amendment, they may file an amended complaint setting forth and analyzing the applicable excessive use of force standard.

[50] Doc. 24 at 16-17.

[51] *Id.* at 12-13.

[52] Doc. 25 ("Plaintiffs do not assert claims against Defendant Caschera in his official capacity.").

[53] *Klein v. Madison*, 374 F. Supp. 3d 389, 428 (E.D. Pa. 2019); *see also Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988) (differentiating between individual and official capacity suits).

[54] Doc. 25 at 8-9.

the doctrine of qualified immunity to his actions.[55] Plaintiffs argue, however, that their pleadings have overcome the bar of qualified immunity.[56]

"'[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[57] While immunity questions should be resolved "at the earliest possible stage in litigation,"[58] on a 12(b)(6) motion, qualified immunity should bar the case only where "'immunity is established on the face of the complaint.'"[59] In considering whether a defendant is entitled to qualified immunity, courts analyze (1) whether the plaintiff has shown facts that make out a constitutional rights violation; and if so, (2) whether those rights were "clearly established" at the time of the incident.[60]

"A legal right is 'clearly established' where 'its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"[61] "'In other words, existing precedent must have placed the statutory or constitutional question beyond debate. This doctrine gives government officials breathing room to

---

[55] *See, e.g., Betz v. Satteson*, 259 F. Supp. 3d 132, 187-88 (M.D. Pa. 2017) (applying qualified immunity to a teacher's actions); Doc. 25 at 7-12.

[56] Doc. 25 at 7-12.

[57] *Betz*, 259 F. Supp. 3d at 187.

[58] *Hunger v. Bryant*, 502 U.S. 224, 227 (1991).

[59] *Thomas v. Indep. Twp.*, 463 F.3d 285, 291 (3d Cir. 2006) (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)).

[60] *Highhouse v. Wayne Highlands Sch. Dist.*, 205 F. Supp. 3d 639, 648 (M.D. Pa. 2016).

[61] *Highhouse*, 205 F. Supp. 3d at 649 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law.'"[62]

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'"[63] "The Supreme Court has held that the Fourteenth Amendment extends this constitutional guarantee to searches and seizures by state officers . . . including public school officials."[64] The Third Circuit has held that the momentary use of physical force by a teacher to restrain a disruptive or unruly student does not effectuate a "seizure" under the Fourth Amendment.[65] Instead, "[a] seizure occurs for Fourth Amendment purposes when 'a reasonable [student] would have believed that he was not free to leave.'"[66]

Here, Plaintiffs have plausibly pled that N.W. was "seized" when Caschera had other students strap N.W. to the backboard for "several minutes."[67] Plaintiffs have pled that he had to stand on his tiptoes to avoid the strap pressing on his throat, and was only released when he feigned coughing.[68] Plaintiffs' pleadings establish that N.W.'s

---

[62]    *Id.* (quoting

[63]    *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146-47 (3d Cir. 2005).

[64]    *Id.* (citing *New Jersey v. T.L.O.*, 469 U.S. 325 (1985)).

[65]    *Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 172 (3d Cir. 2001) (finding that a teacher who pushed a student did not "seize" that student).

[66]    *Shuman*, 422 F.3d at 146-47. (quoting *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988)) (finding that a student confined to a conference room was "seized").

[67]    Doc. 20 at ¶¶ 33, 34, 39; *see Shuman*, 422 F.3d at 147 (citing affirmatively *Doe v. Haw. Dep't of Educ.*, 344 F.3d 906, 909 (9th Cir. 2003) (holding that a student bound with tape for five minutes was "seized")); *cf Gottlieb*, 272 F.3d at 172 (a teacher's push of a student, without restraint on movement, was insufficient to be a seizure).

[68]    Doc. 20 at ¶¶ 38-41.

movement was restrained, and it is plausible that a reasonable student would not have believed that he was free to leave.

However, determining whether N.W. was "seized" is "but the first part of the analysis[;] [i]t must still be determined whether the seizure constituted a violation of his Fourth Amendment rights."[69] Seizures typically require a warrant or probable cause; however, seizures in the context of public schools are instead governed by reasonableness.[70]

Plaintiffs have plausibly pled that the seizure was unreasonable. N.W. was strapped into a backboard in front of his peers with a strap pressing on his neck.[71] Plaintiffs have pled that Caschera's actions were to punish N.W. for asking to go to the restroom and putting his head on his desk.[72] These allegations sufficiently call into question the "reasonableness" of Caschera's seizure of N.W. Defendants dispute the characterization of this conduct, arguing that Caschera's conduct was a "scenario" for instructional purposes.[73] Such a factual determination at this stage would be inappropriate. Plaintiffs have plausibly pled that the seizure unreasonable, as it had no valid justification and was conducted in a distasteful manner. The Court must draw all

---

[69] *Shuman*, 422 F.3d at 147.
[70] *Shuman*, 422 F.3d at 148-49.
[71] Doc. 20 at ¶¶ 33, 35, 38.
[72] Doc. 20 at ¶¶ 41-42.
[73] Doc. 24 ("[T]his exercise was nothing more than a live classroom "scenario" conducted in a Homeland Security Class—a class which is intended to provide students with entry-level skills to perform emergency medical services.").

reasonable inferences in Plaintiffs' favor, and therefore finds a plausible violation of N.W.'s Fourth Amendment rights.

The final inquiry for the qualified immunity analysis is whether Plaintiffs' right was "clearly established" at the time of the disputed conduct. Plaintiffs pleadings plausibly show as much. Defendants argue the specificity of the seizure negates a finding that Caschera violated a "clearly established" right when he seized N.W. in such a way.[74] While surely there should be a dearth of cases involving teachers strapping students down in class to immobilize them, the lack of cases exactly on point is not dispositive. The Supreme Court has held that "officials can still be on notice that their conduct violates established law even in novel factual circumstances."[75] "[T]he right allegedly violated must be defined at the appropriate level of specificity," such that the general principles of the right would be reasonably applicable.[76]

Here, students' Fourth Amendment right to be free from unreasonable seizures in the form of unlawful restraints has been clearly established in this jurisdiction.[77] Indeed, it is more than plausible that reasonable teachers would know that Caschera's conduct was unlawful.[78] At the very least, it is not clear from the face of the complaint

---

[74] Doc. 24 at 14-15.

[75] *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

[76] *Wilson v. Layne*, 526 U.S. 603, 615-16 (1999).

[77] *See, e.g., Shuman*, 422 F.3d at 147; *New Jersey v. T.L.O.*, 469 U.S. 325, 333-34 (1985); *Klump v. Nazareth Area Sch. Dist.*, 425 F. Supp. 2d 622, 641 (E.D. Pa. 2006); *Lawson v. East Orange Sch. Dist.*, No. 16-2704, 2017 WL 751425, at *5 (D.N.J. Feb. 27, 2017) ("a student's right to be free from unreasonable seizures has been 'clearly established'").

[78] The Court should like to believe that most teachers would believe Caschera's behavior was improper. Regardless, Plaintiffs' pleadings speak to this issue as well, as they note that administrators Fisher and Differ were shocked by Caschera's behavior. Doc. 20 at ¶ 46

14

that qualified immunity should bar this claim. Accordingly, Defendants' motion to dismiss Count I is denied as to Caschera.

### b. Count II - *Monell*

Plaintiffs next bring a "custom, policy or practice" *Monell* claim against the District.[79] To hold a municipal liable for deprivation of rights under § 1983, a plaintiff must meet the standards set out in *Monell v. New York Department of Social Servs.*[80] Under *Monell*, to state a claim against the District, Plaintiffs must allege the violation of N.W.'s rights was caused by either a policy or custom of the municipality.[81] To satisfy the pleading standard, Plaintiffs must "identify a custom or policy, and specify what exactly that custom or policy was."[82] Additionally, the alleged policy, custom, or deficiency must be the proximate cause of the plaintiff's injuries.[83]

Courts have begun analyzing four avenues to relief under *Monell*: 1) the existence of a formal policy, officially promulgated or adopted by a municipality; 2) that an official or officials responsible for establishing final policy with respect to the subject matter in question made a deliberate, specific decision; 3) the existence of an unlawful practice by subordinate officials so permanent and well settled as to imply the

---

("Defendant Differ was astonished by the events"); at ¶ 51 (Defendant Fisher indicated that it would be reasonable for Caschera to apologize for his actions); at ¶¶ 61-62.

[79] Doc. 20 at 11-13.

[80] 436 U.S. 658, 690 (1978).

[81] *Monell*, 436 U.S. at 694; *Berg. v. Cnty. Of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000).

[82] *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).

[83] *G.S. v. Penn-Trafford Sch. Dist.*, No. 20-3281, 2023 WL 4486667, at *4 (3d Cir. July 12, 2023); *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Detention. Ctr.*, 372 F.3d 572, 581 (3d Cir. 2004).

constructive acquiescence of policymaking officials; or 4) a claim of failure to train or supervise when it amounts to deliberate indifference to the rights of persons with whom municipal employees would come into contact.[84]

In the Amended Complaint, Plaintiffs provide scattered allegations seemingly related to a variety of the *Monell* avenues.[85] Upon closer examination, most of Plaintiffs' pleadings appear to fall into two broad arguments:[86] 1) Defendant District's

---

[84] *See, e.g., Nye v. Cumberland Cnty.*, No. 1:14-CV-713, 2016 WL 695109, at *4 (M.D. Pa. Feb. 19, 2016) (Jones, J.); *DeRaffele v. City of Williamsport*, No. 4:15-CV-02186, 2018 WL 2086074, *2 (M.D. Pa. May 4, 2018) (Brann, J.); *Edrei v. City of New York*, 254 F. Supp. 3d 565, 579 (S.D.N.Y 2017); *Deferio v. City of Syracuse*, 770 F. App'x 587, 589-90 (2d Cir. 2019); *Misjuns v. City of Lynchburg*, 139 F.4th 378, 384 (4th Cir. 2025); *Red Zone 12 LLC v. City of Columbus*, 758 F. App'x 508, 515 (6th Cir. 2019).

While the Third Circuit has not explicitly used this framework in so many words, it has upheld cases brought under each of the individual avenues. *See Thomas v. City of Phila.*, 779 F. App'x 99, 102 (3d Cir. 2019) (referencing the "formal policy or informal custom," of avenues one and three); *Porter v. City of Phila*, 975 F.3d 374, 383 (3d Cir. 2020) (noting that *Monell* liability may arrive through a "pertinent decision by an official with decision-making authority on the subject," which is avenue two); *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222-23 (3d Cir. 2014) (noting that failure to train amounting to deliberate indifference is a way to bring a *Monell* claim, which is the fourth avenue).

[85] Doc. 20 at ¶¶ 77-89. Plaintiffs provide a shockingly short analysis of their pleadings in brief. Doc. 25 at 15. Indeed, Plaintiffs' entire defense of their *Monell* claim is made in just under a paragraph without a single legal citation. *Id.*

[86] Doc. 20 at ¶¶ 77-89; Doc. 25 at 15. The Court is largely unsure of which theories Plaintiffs actually advance, as their brief makes no effort whatsoever to differentiate the legal standards and apply them. To note, policy or custom theories are separate and distinct from failure or inadequacy theories, with different showings required for each. *Forrest v. Parry*, 930 F.3d 93, 105-06 (3d Cir. 2019) ("Plaintiffs that proceed under a municipal policy or custom theory must make showings that are not required of those who proceed under a failure or inadequacy theory, and vice versa."). Plaintiffs are warned that the Court will not accept lackluster legal analysis going forward. For any future motions, all parties must provide adequate legal support and analysis for their claims or waive the issue.

16

purported policy of hiring underqualified teachers[87] and; 2) Defendant District's failure to train teachers, including Caschera, regarding appropriate classroom behaviors.[88]

As to the first, Plaintiffs' pleadings are inadequate in light of the requirements for policy or custom *Monell* claims. Plaintiffs have not provided a specific policy or decision to hire underqualified teachers, and therefore argue that this constitutes an informal practice or custom.[89] A custom is established through "'practices by state officials that amount to entrenched behavior in the municipal employees.'"[90] "[I]f alleging a custom, the plaintiff must evince a given course of conduct so well-settled and permanent as to virtually constitute law."[91] This avenue is available when the inaction of state officials in the face of a clear, routine practice by subordinates implies the "constructive acquiescence of policymaking officials."[92]

Plaintiffs' pleading falls far short of this standard. The main allegation used to support this avenue is conclusory;[93] otherwise, Plaintiffs do not provide sufficient information to show that a custom of hiring underqualified teachers is so widespread

---

[87] Doc. 20 at ¶¶ 21-24, 84 ("The District developed a practice of processing teachers for the licensing option with the least restrictive educational requirements.").

[88] Doc. 20 at ¶¶ 21-24, 85, 86, 87.

[89] Doc. 20 at ¶ 84.

[90] *Murphy v. Doe Police Detective #1*, No. 20-2230, 2021 WL 4399646, at *5 (E.D. Pa. Sept. 27, 2021) (quoting *Ekwunife v. City of Phila.*, 245 F. Supp. 3d 660, 674 (E.D. Pa. 2017)).

[91] *Forrest*, 930 F.3d at 105-06.

[92] *DeRaffele v. City of Williamsport*, No. 4:15-CV-02186, 2018 WL 2086074, at *2 (M.D. Pa. May 4, 2018) (Brann, J.) (quoting *Nye v. Cumberland Cnty.*, No. 1:14-CV-713, 2016 WL 695109, at *4 (M.D. Pa. Feb. 19, 2016)).

[93] Doc. 20 at ¶¶ 84 ("The District developed a practice of processing teachers for the licensing option with the least restrictive educational requirements").

and settled as to be constructive acquiescence by policymakers.[94] For instance, Plaintiffs fail to show any other instances of teachers being hired without the requisite qualifications.[95] Accordingly, Plaintiffs have not sufficiently pled a *Monell* custom or practice of hiring underqualified teachers.

Second, Plaintiffs bring a claim of failure to train or supervise, specifically alleging that Defendant District provided no training for newly hired staff. Under this theory, the failure or inadequacy must amount to "deliberate indifference on the part of the municipality."[96] "[D]eliberate indifference requires 'proof that a municipal actor disregarded a known or obvious consequence of his action.'"[97] Specifically, Plaintiffs must plead that "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."[98]

Moreover, when bringing a failure to train theory, "[t]he alleged deficiency in a training program must be closely related to the alleged constitutional injury because

---

[94] *Watson v. Abington Twp.*, 478 F.3d 144, 155-56 (3d Cir. 2007). The only factual support for this contention found in the Amended Complaint comes from ¶ 84, where Plaintiffs allege that "[t]his [custom] is evidenced by electronic mail records between the District and State Department of Education where there was exhaustive discussion of how to calculate the days remaining in the year to avoid the need for more intensive licensing." Doc. 20 at ¶ 84. This is insufficient to show the requisite level of acquiescence to raise a plausible *Monell* violation.

[95] *See M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, 43 F. Supp. 3d 412, 423 (M.D. Pa. 2014) (holding that one instance of conduct is insufficient to establish a widespread custom).

[96] *Forrest*, 930 F.3d at 106.

[97] *Hightower v. City of Phila.*, 130 F.4th 352, 357 (3d Cir. 2025).

[98] *Forrest*, 930 F.3d at 106.

'[i]n virtually every instance where a person has had his or her constitutional rights violated by a city employee, [said] plaintiff will be able to point to something the city "could have done" to prevent the unfortunate incident.'"[99] Additionally, "[f]ailure to adequately train municipal employees can ordinarily be considered deliberate indifference 'only where the failure has caused a pattern of violations, and the need for more or different training is obvious and inadequacy is very likely to result in violation of constitutional rights.'"[100]

At this stage, Plaintiffs have not met the pleading standard under *Monell* to show that the District's purported failure to train teachers amounted to deliberate indifference. Specifically, Plaintiffs have not pled facts showing that "the situation involves a difficult choice or a history of mishandling,"[101] or that failure to explicitly instruct teachers regarding appropriate punishments would very likely result in teachers using such corporal punishment methods.[102] Plaintiffs have not pled, for example, that other teachers besides Caschera were untrained, or that there were previous physical altercations between teachers and students.[103] To the extent that Plaintiffs could show

---

[99]   *Forrest*, 930 F.3d at 109.

[100]   *Victory Outreach Ctr. v. Melso*, 313 F. Supp. 2d 481, 493 (E.D. Pa. 2004).

[101]   *Forrest*, 930 F. 3d at 106.

[102]   *Victory Outreach Ctr.*, 313 F. Supp. 2d at 493.

[103]   To the extent that Plaintiffs seek to bring essentially a negligent hiring claim against Defendant District for the hiring of Caschera, there is a different standard that would need to be met. *See M.S.*, 43 F. Supp. 3d at 426 (holding that a *Monell* negligent hiring claim "'depend[s] on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff'") (quoting *Bd. of the Cnty. Comm'ns of Bryan Cnty. v. Brown*, 520 U.S. 397, 403-04 (1997)). Plaintiffs have not pled that Caschera had any history of improper conduct or anything else that would put Defendant District on notice that he was likely to strap children in his class to medical backboards.

that there was an utter lack of any training of hired educators sufficient to show deliberate indifference to the use of corporal punishment, they have not pled sufficient facts to do so at this time.[104] Therefore, as Plaintiffs have failed to plead either *Monell* theory successfully, Defendants' motion to dismiss is granted as to Count II.

### c.    Count IV - State Created Danger

Plaintiffs' last federal claim is Count IV, which Plaintiffs bring against the District only for state-created danger. This is a form of § 1983 claim for due process deprivation, available when the state violates its "constitutional duty to protect a person against injuries inflicted by a third-party [arising because] it affirmatively place[d] the person in a position of danger the person would not otherwise have faced."[105]

A state-created danger claim has four elements: 1) the harm caused was foreseeable and fairly direct; 2) a state actor acted with a degree of culpability that shocks the conscience; 3) the relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts or a member of a discrete class of persons potentially harmed by the state's actions; and 4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.[106]

---

[104] At this time, Plaintiffs' only pleading supporting their failure to train theory says that "District failed to develop a training program for newly hired staff. Upon review of Defendant Cashcera's employment record there is no record of any training being conducted." Doc. 20 at ¶ 85. The first half of this borders on conclusory, and the second is isolated to Caschera. More factual pleadings could push this forward to a plausible *Monell* custom, but the available pleadings at this time fail to do so.

[105] *Walter v. Pike Cnty. Pa.*, 544 F.3d 182, 192 (3d Cir. 2008) (overruled in part on other grounds).

[106] *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006).

Plaintiffs' Amended Complaint only asserts a state-created danger claim against the District, not Caschera.[107] Generally, the Court does not see a reason why a state-created danger claim against a municipality would not also be subject to the elements of *Monell*, but Defendants have made no such argument and there appears to be some authority to the contrary.[108] Regardless, Plaintiffs fail to establish a state-created danger claim against the District.

Plaintiffs' claim against the District fails on nearly every element. The hiring of a teacher "from industry," implying that Caschera had some form of educational background in teaching, with a temporary substitute teaching certificate does not render it "reasonably foreseeable" that such a teacher would direct that a student be strapped to a medical backboard as punishment. Moreover, Plaintiffs have not addressed whether the District's conduct shocks the conscience, as it is the District, and not Caschera, against whom this claim is brought.[109] Additionally, as discussed above, Plaintiffs have not pled sufficient facts to show that the District acted with deliberate indifference

---

[107] Doc. 20 at 16.

[108] *See Sciotto v. Marple Newton Sch. Dist.*, 81 F. Supp. 2d 559, 574 (E.D. Pa. 1999) (noting that "[t]o require a [*Monell*] showing to establish municipal liability under a state-created danger theory would be to eviscerate the state-created danger theory, because the theory is premised upon the notion that, under certain circumstances, a state can be held liable for harm inflicted by private actors."); *Berry v. Woodland Hills Sch. Dist.*, No. 11-CV-13443, 2013 WL 3802479, at *7 (W.D. Pa. July 19, 2013) (noting the opposite).

[109] Moreover, Plaintiffs conflate in pleadings which acts, the District's or Caschera's, are applicable to the elements. Doc. 20 at ¶ 107 ("Plaintiffs must establish . . . [t]hat the Defendant, *District*, engaged in an affirmative act . . . [and] [t]he Defendant, *Caschera* acted with deliberate indifference.") (emphasis added). Again, Plaintiffs' brief is woefully inadequate in giving form to substance. Should Plaintiffs feel so inclined to amend, it would be appropriate for them to provide significantly more analysis and legal support about why Caschera's actions could give rise to state created danger liability for the District.

towards students. However, and most dispositive, is the affirmative action element; courts have held that failure to train does not satisfy the affirmative act requirement for this claim.[110]

Accordingly, Plaintiffs have failed to plead a plausible state-created danger claim against the District. Defendants' motion to dismiss is granted as to Plaintiffs' Count IV for state created danger.

### 2.    State Law Claims - Counts III, V, VI, and VII

Plaintiffs' remaining claims arise under state law and are all against Caschera only.[111] Plaintiffs bring against Caschera an unreasonable search and seizure claim under Article I Section 8 of the Constitution of the Commonwealth of Pennsylvania ("Count III"), a battery claim ("Count V"), an intentional infliction of emotional distress claim ("Count VI"), and a false imprisonment claim ("Count VII").

### a.    Search and Seizure Article I Section 8 - Count III

In addition to Plaintiffs' § 1983 claim analyzed above for unreasonable search and seizure in violation of the Fourth Amendment, Plaintiffs also bring a claim under Article I Section 8 of the Constitution of the Commonwealth of Pennsylvania. This claim "essentially mirror[s]" Plaintiffs' claims under the Fourth Amendment of the

---

[110] *L.H. v. Pittston Area Sch. Dist.*, 130 F. Supp. 3d 918, 935-36 (M.D. Pa. 2015) (collecting cases and holding that a School District's failure to train the teacher could not provide the basis for a state-created danger claim); *Nawuoh v. Venice Ashby Cmty. Ctr.*, 802 F. Supp. 2d 633, 642 (E.D. Pa. 2011); *Morrow v. Balaski*, 719 F.3d 160, 178 (3d Cir. 2013).

[111] Doc. 20 at Counts III, V, VI, VII.

United States Constitution.[112] All parties analyze this claim jointly with Plaintiffs' Fourth Amendment claims. Accordingly, the Court sees no reason to depart from the parties' mutual understanding of these claims.[113] As I have found above that Plaintiffs plausibly state a violation of the Fourth Amendment, so too does Plaintiffs' claim under Article I Section 8 of the Pennsylvania Constitution. Therefore, Defendants' motion to dismiss Count III is denied.

### b.    Battery - Count V

Plaintiffs next bring a variety of state law tort claims. First, Plaintiffs Count V alleges Caschera committed battery against N.W. "Under Pennsylvania law, battery is defined as an intentional 'harmful or offensive contact with the person of another.'"[114] "'The fact that contact occurs without consent is sufficient to establish that it is offensive, and no intent to harm the plaintiff need be established.'"[115]

At this stage, Plaintiffs have plausibly pled that Caschera committed a battery against N.W. by causing physical contact with him through the direction of his classmates without N.W.'s consent.[116] Defendants' argument to the contrary relies on

---

[112] *E.N. v. Susquehanna Twp. Sch. Dist.*, No. 1:09-CV-1727, 2010 WL 4853700, at *18 (M.D. Pa. Nov. 23, 2010).

[113] *Id.*; *SF ex rel. Freeman v. Delaware Valley Sch. Dist.*, No. 3:08-CV-581, 2008 WL 4680580, at *7 (M.D. Pa. Oct. 20, 2008).

[114] *Martin-McFarlane v. City of Phila*, 299 F. Supp. 3d 658, 670 (E.D. Pa. 2017) (quoting *Nace v. Pennridge Sch. Dist.*, 185 F. Supp. 3d 564, 584 (E.D. Pa. 2016); *C.C.H. v. Phila. Phillies, Inc.*, 596 Pa. 23, 29 n.4 (2008); *Cooper ex rel. Cooper v. Lankenau Hosp.*, 616 Pa. 550, 563-64 (2012).

[115] *Id.*

[116] Defendants argue only that Caschera did not intend the contact to be harmful; however, for the tort of battery, the actor need only intend to touch the plaintiff without consent, which constitutes harmful or offensive contact. *Martin-Mcfarlane*, 299 F. Supp at 670. Defendants

23

the Court determining whether Caschera's conduct was or was not part of some "scenario."[117] To do so at this stage would be inappropriate. Instead, the Court must draw all reasonable inferences in Plaintiffs' favor; the facts as pled render this a plausible battery. Accordingly, Defendants' motion to dismiss Count V is denied.

### c.        Intentional Infliction of Emotional Distress - Count VI

Next, Plaintiffs bring a claim for intentional infliction of emotional distress ("IIED") against Caschera.[118] Such a claim requires a showing of "(1) extreme and outrageous conduct, (2) which is intentional or reckless; (3) it must cause emotional distress, and (4) that distress must be severe."[119] "To establish a claim for IIED, 'the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'"[120] To meet this high burden, "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"[121]

"The standard for IIED is generally not satisfied by allegations of 'insults, indignities, threats,' or other similar conduct."[122] Instead, to make out an IIED claim,

---

do not argue, so the Court will not address, whether Caschera's actions of directing other students to place N.W. on the backboard constitute contact on Caschera's behalf sufficient to establish a battery. At this stage, Plaintiffs' allegations are sufficient to show that Caschera plausibly put N.W. through harmful or offensive contact.

[117] Doc. 24 at 32-33.

[118] Doc. 20 at 19.

[119] *L.H.*, 130 F. Supp. 3d at 927.

[120] *Id.* (quoting *Hoy v. Angelone*, 554 Pa. 134, 151 (1998)).

[121] *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987 (Pa. Super. 1997).

[122] *L.H.*, 130 F. Supp. 3d at 927.

there must be "'knowledge on the part of the actor that *severe emotional distress is substantially certain to be produced by his conduct.*'"[123] Additionally, under Pennsylvania law, a plaintiff must allege some type of resulting physical harm due to the defendant's conduct and the severe emotional distress incurred.[124]

Plaintiffs' claims cannot sustain an IIED claim. While the facts as pled plausibly show that Caschera's conduct, strapping a child to a medical backboard in front of a room full of peers, could be considered outrageous,[125] Plaintiffs have not pled any physical harm of N.W. resulting from Caschera's conduct. This is required under Pennsylvania law. Accordingly, Defendants' motion to dismiss Count VI is granted.

### d.    False Imprisonment - Count VII

Finally, Plaintiffs bring a claim for false imprisonment against Caschera. "To state a facially plausible claim for false imprisonment under Pennsylvania law, a Complaint must allege facts that would establish that [the victim]: '(1) had been detained; and (2) the detention was unlawful.'"[126] "'In addition to unlawful activity, Pennsylvania law requires (1) acts intending to confine another within boundaries fixed

---

[123] *Hoffman v. Memorial Osteo. Hosp.*, 342 Pa. Super. 375, 382 (1985) (quoting *Forster v. Manchester*, 410 Pa. 192, 199 (1963) (emphasis in original)).

[124] *Davis v. Wigen*, 82 F.4th 204, 216 (3d Cir. 2023); *Reedy v. Evanson*, 615 F.3d 197, 232 (3d Cir. 2010).

[125] *DiSalvio v. Lower Merion High Sch. Dist.*, 158 F. Supp. 2d 553, 561 (E.D. Pa. 2001) ("In light of the parties' age and relative power, [the defendant's] actions were extreme and outrageous, and any reasonable person would have known that to act in such a way would be to incur liability and resentment.").

[126] *Brown v. American Airlines, Inc.*, 723 F. Supp. 3d 411, 420 (E.D. Pa. 2024) (quoting *Gwynn v. City of Phila.*, 719 F.3d 295, 304 n.4 (3d Cir. 2013)).

by another which (2) directly or indirectly result in such confinement (3) of which the plaintiff is conscious or by which the plaintiff is harmed.'"[127]

At this stage, Plaintiffs have set out a plausible claim for false imprisonment. Specifically, they have alleged that, without N.W.'s consent, Caschera ordered N.W. to be immobilized by straps on a medical backboard.[128] Defendants again ask the Court to determine that this was part of a "scenario" and that, therefore, such detention was not unlawful.[129] The true nature of this instance can be uncovered fully in discovery; at this time, however, Plaintiffs' claim of false imprisonment is plausible and, accordingly, Defendants' motion to dismiss Count VII is denied.

### 3. Punitive Damages

Defendants finally move to dismiss Plaintiffs' claim for punitive damages, and argue as much in their brief.[130] Plaintiffs' brief in opposition does not address the issue of punitive damages whatsoever.[131] Plaintiffs' failure to oppose an argument made in Defendants' motion, when Plaintiffs had ample opportunity to do so, constitutes a waiver of that argument.[132] Therefore, Defendants' motion to dismiss Plaintiffs' claim for punitive damages is granted.

---

[127] *Id.* (quoting *Regan v. Upper Darby Twp.*, 363 F. App'x 917, 922 (3d Cir. 2010)).

[128] Doc. 20 at ¶ 132.

[129] Doc. 24 at 37-38.

[130] Doc. 24 at 38-40.

[131] Doc. 25 at *passim*.

[132] *See Dreibelbis v. Scholton*, 274 F. App'x 183, 185 (3d Cir. 2008). Indeed, the Court cannot discern on which claims and from which Defendants Plaintiffs would seek punitive damages. Moreover, Plaintiffs are lucky that the Court has not considered far more of their arguments waived, given the extraordinarily sparse nature of their briefing throughout. At further stages, the parties are cautioned that the Court will not be so lenient with bare bones briefings.

## III.   CONCLUSION

Defendants' motion to dismiss pursuant to Rule 12(b)(6) is granted in part and denied in part. The following are dismissed without prejudice: Plaintiffs' Count I against the District, Count II, Count IV, Count VI, and Plaintiffs' punitive damages claim. Defendant's motion is denied as to: Plaintiffs' Count I against Caschera, Count III, Count V, and Count VII.

"The Federal Rules of Civil Procedure do not address the situation in which a deficiency in a complaint could be cured by amendment but leave to amend is not sought."[133]   But the law in the Third Circuit is clear that leave to amend should be "freely given" regardless of whether leave is specifically requested.[134]   Therefore, Plaintiffs shall be given a final opportunity to amend, if they feel inclined to do so.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[133]   *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).
[134]   *Id.* (quoting FED. R. CIV. P. 15(a)).