**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

DR. PAGE CAROL WOODS and
DR. NATHANIAL WOODS, JR.,
individually and o/b/o N.W., a minor,

Plaintiffs,

v.

WILLIAMSPORT AREA SCHOOL
DISTRICT, *et al.*,

Defendants.

No. 4:25-CV-01562

(Chief Judge Brann)

**MEMORANDUM OPINION**

**JULY 31, 2026**

## I. BACKGROUND

Plaintiffs Dr. Page Carol Woods and Dr. Nathanial Woods, Jr. ("Parent Plaintiffs") brought, individually and on behalf of minor N.W. (collectively, "Plaintiffs"), a nine-count second amended complaint against Defendants Williamsport Area School District ("the District") and Richard Caschera ("Caschera") (collectively, "Defendants").[1]

Plaintiffs had previously filed a first amended complaint and Defendants moved to dismiss; in response, the Court dismissed some of Plaintiffs' claims and granted Plaintiffs leave to amend.[2] Plaintiffs then filed the second amended

1 Doc. 34 (Second Amend. Compl.).
2 Docs. 20, 23, 32.

complaint, and Defendants filed the instant partial motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[3] The motion is now ripe for disposition. For the reasons stated below, it is granted in part and denied in part.

## II. LAW

### A. Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[4] and *Ashcroft v. Iqbal*,[5] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[6] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of

---

3 Docs. 34, 35. The Court had previously allowed some of Plaintiffs' claims to proceed without requiring amendment, including Plaintiffs' § 1983 claim against Caschera and Plaintiffs' battery and false imprisonment tort claims against Caschera. Doc. 34 at 13-15, 23, 25. Defendants accordingly did not move for dismissal on those claims. The underlying analysis on those claims can be found in the prior Memorandum Opinion at Doc. 32.

4 550 U.S. 544 (2007).

5 556 U.S. 662 (2009).

6 *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[7]

### B. Facts Alleged in the Second Amended Complaint

The facts alleged were set forth in greater detail in the previous Memorandum Opinion and shall not be restated in depth here. In summary, the facts alleged in the second amended complaint, which this Court must accept as true for the purposes of this motion, are as follows. N.W. was a student at the District who was being taught by the newly hired substitute teacher Caschera.[8] Caschera held a temporary substitute teaching certificate and a four-year college degree unrelated to teaching.[9] In class one day, N.W. had his head down on the desk, and Caschera first placed smelling salts under N.W.'s nose, then ordered other students in the classroom to secure him to a portable medical backboard.[10] The backboard was turned vertically, and N.W. was adhered to the backboard with a strap just below his neck, so he had to stand on his toes to avoid the strap pressing on his throat.[11] N.W. was left in this fashion for several minutes, and had to feign coughing before Caschera removed

---

7 *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

8 Doc. 34 at ¶¶ 19-20.

9 *Id.* at ¶¶ 21-22.

10 *Id.* at ¶¶ 25-30.

11 *Id.*

him from the backboard.[12] Caschera asked N.W. if he would stay awake, and then released him from the backboard.[13]

Plaintiffs add few new factual allegations to the second amended complaint, most of which relate to N.W.'s ADHD and 504 individualized education plan.[14] Plaintiffs also add allegations of injuries, noting that N.W. has been formally diagnosed with "adjustment disorder with anxiety" after the incident and undergoes counseling sessions.[15] Additionally, Plaintiffs plead that "N.W. exhibits somatic symptoms such as involuntary tremors, a persistent lump in his throat, and stomach discomfort" from the emotional turmoil of the incident.[16]

### C. Analysis

Plaintiffs bring a total of nine claims against Defendants: Count I, against both Defendants for violation of N.W.'s Fourth Amendment rights under 42 U.S.C. § 1983 ("§ 1983"); Count II, against both Defendants for discrimination under the Americans with Disabilities Act; Count III, against both Defendants for discrimination under Section 504 of the Rehabilitation Act; Count IV, against both Defendants for violations of the Equal Protection Clause under § 1983; Count V, against the District for racial discrimination under the Civil Rights Act; Count VI,

---

12 *Id.* at ¶¶ 30-33.
13 *Id.*
14 *See, e.g.*, *id.* at ¶¶ 14-15. Plaintiffs also add allegations regarding the timeline in which the District's employees reported the incident to ChildLine and the authorities, but none of those allegations are relevant to any of Plaintiffs' claims and need not be addressed in detail.
15 *Id.* at ¶¶ 64-66.
16 *Id.*

against both Defendants for violations of the Pennsylvania Constitution; Count VII, against Caschera for battery; Count VIII, against Caschera for Intentional Infliction of Emotional Distress; and Count IX, against Caschera for false imprisonment.

Defendants move to dismiss all claims against the District and those claims against Caschera which the Court did not previously find to be cognizable. Specifically, Defendants move to dismiss Count I against the District, Counts II-V against both Defendants, Count VI against the District, and Count VIII.[17] Additionally, Defendants move to dismiss Plaintiffs' punitive damages claims and any claims brought by Parent Plaintiffs. I address first the § 1983 claims, then the Pennsylvania state constitution claim, then together the ADA and RA claims, the Civil Rights Act claim, then the Pennsylvania tort claims, and finally Defendants' arguments regarding punitive damages and Parent Plaintiffs' claims.

### 1. Section 1983 Claims – Counts I and IV

Plaintiffs bring two claims under 42 U.S.C. § 1983 ("§ 1983"). Count I alleges violations of the Fourth Amendment's prohibition against unreasonable search and seizures, while Count IV alleges violations of the Equal Protection Clause's prohibition on racial discrimination. Both are brought against the District and Caschera. I previously held that Count I, brought under the Fourth Amendment, was cognizable against Defendant Caschera,[18] and Defendants accordingly only move

---

17 Doc. 35 at 6.
18 Doc. 32 at 14-15.

for dismissal with respect to the District on Count I.[19] Defendants move for dismissal in full against both Defendants on Count IV.

Both counts fail to state a claim against the District, and Count IV also fails to state a claim against Caschera. Accordingly, Count I is dismissed with prejudice against the District and Count IV is dismissed with prejudice in its entirety.

### a. Counts I and IV Against the District – *Monell* Claims

The only avenue available to plaintiffs for suit against a municipality under § 1983 is through a *Monell* claim.[20] Plaintiffs bring two § 1983 claims against the District; the first, for violations of N.W.'s Fourth Amendment rights, and the second for violations of the Equal Protection Clause.[21]

There are four varieties of *Monell* claims: 1) the existence of a formal policy, officially promulgated or adopted by a municipality; 2) that an official or officials responsible for establishing final policy with respect to the subject matter in question made a deliberate, specific decision; 3) the existence of an unlawful practice by subordinate officials so permanent and well settled as to imply the constructive acquiescence of policymaking officials; or 4) a claim of failure to train or supervise when it amounts to deliberate indifference to the rights of persons with whom

19 Doc. 35 at 6.
20 Doc. 32 at 9 n.46, 15 n.80; 436 U.S. 658, 690.
21 Doc. 34 at Counts I, IV.

municipal employees would come into contact.[22] Additionally, the policy, decision, practice, or failure must have violated the plaintiff's constitutional rights.[23]

I previously dismissed Plaintiffs' *Monell* claim against the District for Fourth Amendment violations for failing to adequately plead any specific state custom, practice, policy, or failure to act amounting to deliberate indifference.[24] In the second amended complaint, Plaintiffs restate and reformulate the same allegations that I previously found insufficient to state a *Monell* claim for violations of the Fourth Amendment.[25] Plaintiffs have removed their more specific allegations and provide only one general allegation regarding municipal action, asserting that "Defendant District had a practice of pushing individuals through to full-time teaching positions, despite the fact that they were unqualified."[26] However, this statement is merely a

---

22 *See, e.g., Nye v. Cumberland Cnty.*, 2016 WL 695109, at *4 (M.D. Pa. Feb. 19, 2016) (Jones, J.); *DeRaffele v. City of Williamsport*, 2018 WL 2086074, *2 (M.D. Pa. May 4, 2018) (Brann, J.); *Edrei v. City of New York*, 254 F. Supp. 3d 565, 579 (S.D.N.Y 2017); *Deferio v. City of Syracuse*, 770 F. App'x 587, 589-90 (2d Cir. 2019); *Misjuns v. City of Lynchburg*, 139 F.4th 378, 384 (4th Cir. 2025); *Red Zone 12 LLC v. City of Columbus*, 758 F. App'x 508, 515 (6th Cir. 2019). While the Third Circuit has not explicitly used this framework in so many words, it has upheld cases brought under each of the individual avenues. *See Thomas v. City of Phila.*, 779 F. App'x 99, 102 (3d Cir. 2019) (referencing the "formal policy or informal custom," of avenues one and three); *Porter v. City of Phila*, 975 F.3d 374, 383 (3d Cir. 2020) (noting that Monell liability may arrive through a "pertinent decision by an official with decision-making authority on the subject," which is avenue two); *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222-23 (3d Cir. 2014) (noting that failure to train amounting to deliberate indifference is a way to bring a Monell claim, which is the fourth avenue).

23 *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006).

24 Doc. 32 at 17-20.

25 Doc. 20 at 11-13, Doc. 34 at ¶¶ 81-86.

26 Doc. 34 at ¶ 84.

recitation of the custom element of *Monell*, and is insufficient to state a claim.[27] As Plaintiffs have failed to add any additional pleadings demonstrating an official decision, policy, custom, or deliberately indifferent failure to act,[28] the same deficiencies laid out in my prior Memorandum Opinion[29] persist in the second amended complaint.[30] I will grant Defendants' motion to dismiss Plaintiffs' Count I § 1983 *Monell* claim against the District with prejudice.

Additionally, Plaintiffs added Count IV in the second amended complaint against the District for violations of the Equal Protection Clause's prohibition

---

[27] *See, e.g., Bayer v. Monroe Cnty. Children and Youth Services*, 414 F. App'x 431, 437 (3d Cir. 2011) (holding that conclusory allegations of policy, custom, or practice are not cognizable); *Jackson v. Moore*, 2018 WL 4094962, at *3 (E.D. Pa. Aug. 27, 2018) ("Plaintiffs do not include any facts to support their theory that the City has permitted a custom of [constitutionally prohibited conduct]. Nor have Plaintiffs alleged any facts to support a City custom of [constitutionally prohibited conduct]. Plaintiffs instead simply repeat the legal requirements for a Monell claim without identifying any facts to support the claim. This is not enough."). *See also Peterson v. Allegheny Cnty.*, 2022 WL 280948, at *20-21 (W.D. Pa. Jan. 31, 2022); *Muhammad v. Nat'l Ass'n of Realtors*, 2025 WL 2171143, at *20 (E.D. Pa. July 31, 2025).

[28] Plaintiffs argue that the District was deliberately indifferent to the known and obvious consequences of its policies, but the only factual allegation in support of this conclusion is that "Defendant District did not act with appropriate outrage" upon learning of Defendant Caschera's actions. Doc. 40 at 23. The reaction of the District after the fact is insufficient to show ex ante deliberate indifference to an official custom or policy of deprivation of rights.

Plaintiffs have done nothing to fix the deficiencies I previously enumerated, nor to address the applicable legal standard for deliberate indifference failure to train claims. Doc. 32 at 18-19 (laying out the applicable framework). I previously noted several avenues Plaintiffs could take to render a failure to train claim plausible, such as pleading a history of inappropriate conduct by Caschera or providing more factual pleadings to establish a pattern of deficiently training teachers. Doc. 32 at 19-20, 19 n. 103, 20 n.104. Plaintiffs chose not to pursue any of those avenues, and once again focused only on Caschera's actions and credentials. One unqualified or untrained teacher does not a *Monell* claim make.

[29] Doc. 32 at 17-20.

[30] *Id.*

against racial discrimination.[31] However, Plaintiffs make no allegation whatsoever that the District had any type of policy, practice, custom, or official decision that violated the Equal Protection Clause. There is no allegation that the District knew Caschera intended to treat N.W. in the manner that he did, or that the District took any steps to cause racial discrimination. Plaintiffs describe only Caschera's actions during the incident, and conclude based on Caschera's actions that "Defendants District and Caschera did not treat white students the same way [as black students]."[32] Yet Plaintiffs do not explain how the District purportedly treated white students differently than black students, nor do Plaintiffs point to an official custom or decision to do so.

Plaintiffs also do not set out sufficient facts to conclude that the District was deliberately indifferent to any discrimination.[33] Instead, Plaintiffs appear to be asserting something akin to vicarious liability for the District because of Caschera's actions;[34] however, there is no such liability under § 1983.[35] As Plaintiffs do not

---

31 Doc. 34 at Count IV.

32 Doc. 34 at ¶¶108-110. For instance, the second amended complaint asserts that "Defendants District and Caschera . . . put[] smelling salts under [N.W.'s] nose and strapp[ed] him to a blackboard," but does not explain how the District took any action to approve or ratify, implicitly or explicitly, that course of action. Doc. 34 at ¶ 109. Plaintiffs' brief in opposition similarly refers only to Defendant Caschera's conduct and makes no reference to any action on behalf of the District. Doc. 40 at 20-21.

33 Additionally, for the reasons stated below, Plaintiffs have not adequately pled that any racial discrimination occurred. Therefore, their *Monell* must fail; without discrimination there can be no custom or practice of discrimination.

34 Doc. 40 at 20 ("N.W. is a black student who was treated differently because of his race by Defendant Caschera, a white teacher, who is also an agent of the Defendant District.").

35 *See Grant v. Winik*, 948 F. Supp. 2d 480, 510 (E.D. Pa. 2013).

plead any state action sufficient to support a *Monell* claim against the District, Plaintiffs' Count IV is also dismissed with prejudice.

### b. Count IV Against Defendant Caschera

Plaintiffs also bring Count I and Count IV against Defendant Caschera. I previously analyzed Count I in my prior Memorandum Opinion, finding it plausibly stated a claim for relief.[36] Plaintiff's new claim, Count IV, asserts that Caschera violated the Equal Protection Clause through impermissible racial discrimination against N.W.[37]

"To bring a claim under § 1983 for the denial of equal protection based on race, a plaintiff must show: (1) he is in a protected class; (2) the defendant acted under the color of state law; and (3) the defendant treated the plaintiff differently *because of* his race, or, put differently, acted with a racially discriminatory intent or purpose."[38] Accordingly, "[t]o state an equal protection claim, a plaintiff must plausibly allege that she was treated differently from persons who are similarly situated, and that this discrimination was purposeful or intentional rather than incidental."[39] Conclusory allegations of discriminatory intent are insufficient.[40]

---

36 Doc. 32 at 14-15.

37 Doc. 34 at Count IV.

38 *Johnson v. Fuentes*, 704 F. App'x 61, 65 (3d Cir. 2017) (internal citations omitted) (emphasis added). Plaintiffs agree that "discriminatory intent or purpose on the part of the decision maker" is a necessary element of this claim. Doc. 34 at ¶ 107.

39 *DeLuca's Auto Repair Inc. v. City of Hazleton*, 2026 WL 852013, at *14 (M.D. Pa. Mar. 27, 2026) (citing *City of Cleburne v. Cleburne living Ctr., Inc.*, 473 U.S. 432, 439 (1985)).

40 *Blanchard v. Gallick*, 448 F. App'x 173, 176 (3d Cir. 2011).

Plaintiffs have not pled a valid Equal Protection Clause violation here because they have failed to allege intentional discrimination. Plaintiffs assert that "Caschera did not treat white students the same way" as N.W.,[41] but fail to plead any facts to support this conclusion. For instance, Plaintiffs do not plead any relevant comparator students. "To be deemed 'similarly situated,' the individuals with whom a plaintiff seeks to be compared must 'have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct.'"[42] Plaintiffs have not pleaded any other students acted in the same way as N.W., namely putting his head down on his desk, who were not treated similarly to N.W.[43]

Additionally, even if the other students in class could be considered sufficiently similarly situated to render them adequate comparators for the analysis, "'[w]ithout more, the mere existence of disparate impact does not prove purposeful discrimination.'"[44] Indeed, any differential treatment must have been done so purposefully on the basis of a protected characteristic to state a viable equal

41 Doc. 34 at ¶ 110.

42 *See Farnsworth v. Manor Healthcare Corp.*, 2003 WL 22597612, at *6 (E.D. Pa. Nov. 4, 2003) (referring to the similarly situated comparator analysis in the context of Title VII) (quoting in part *Anderson v. Haverford College*, 868 F. Supp. 741, 745 (E.D. Pa. 1994)).

43 Doc. 34 at ¶ 24.

44 *Shadle v. Pa. State Sys. of Higher Educ.*, 2025 WL 3296312, at *8 (M.D. Pa. Nov. 26, 2025) (Brann, J.) (quoting *Doe v. Williamsport Area Sch. Dist.*, 699 F. Supp. 3d 306, 323-24 (M.D. Pa. 2023)); *see also Lynn v. Bank of New York Mellon*, ---F.4th---, 2026 WL 1945752, at *4 (3d Cir. July 6, 2026) (analyzing a racial discrimination claim where a black man was fired and replaced by a white man, and noting that differential treatment "is not necessary to raise an inference of discriminatory animus, [but] it is also not sufficient on its own to do so."); *Williams v. Pennridge Sch. Dist.*, 782 F. App'x 120, 127 (3d Cir. 2019) ("[A]s we have repeatedly held, evidence of disparate treatment, alone, is insufficient to establish discriminatory intent.").

protection claim.[45] Plaintiffs have provided no factual pleadings from which discriminatory intent could be inferred.[46] Accordingly, Plaintiffs' Count IV claim against Defendant Caschera is dismissed with prejudice.

### 2. Claims Under Article I, Section 8 of the Pennsylvania Constitution – Count VI

Next, Plaintiffs purport to bring Count VI against the District and Caschera for violations of Article I, Section 8 of the Constitution of the Commonwealth of Pennsylvania for unreasonable search and seizure.[47] Previously, the parties had indicated that these claims rose and fell with Plaintiffs' § 1983 Fourth Amendment arguments, so the Court did not inquire into the validity of such an action.[48] Upon further inspection, though, Plaintiffs' claims under the Pennsylvania Constitution must be dismissed because "Pennsylvania does not have a statutory equivalent to § 1983 and does not recognize a private right of action for damages stemming from alleged violation of the state constitution."[49] Plaintiffs' Count VI seeks only

---

45 *Memphis St. Acad. Charter Sch. at J.P. Jones v. Phila. Sch. Dist.*, 2026 WL 934190, at *5 (3d Cir. Apr. 7, 2026) (in an action for injunctive relief under the parallel provision of the Pennsylvania state constitution noting that "simply showing impact" is insufficient for an equal protection claim; "[r]ather, the claimant must show that the actor acted because of the protected trait."); *see also Johnson v. Fuentes*, 704 F. App'x 61, 65-66 (3d Cir. 2017); *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 265-66 (1977).

46 The only allegation related to intent is a conclusory, barebones recitation of the elements of an equal protection clause: "Plaintiff N.W. was a black student treated differently because of his race by Defendant Caschera, a white teacher." Doc. 34 at ¶ 108.

47 Doc. 34 at Count VI.

48 Doc. 32 at 22-23.

49 *Miles v. Zech*, 788 F. App'x 164, 167 (3d Cir. 2019); *Pocono Mt. Charter Sch. v. Pocono Mt. Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the

damages, not injunctive or declaratory relief, so this claim must be dismissed with prejudice against both the District and Caschera.

### 3. Claims under the ADA and RA – Counts II & III

Next, Plaintiffs bring two disability-based claims, Count II for discrimination under the Americans with Disabilities Act ("ADA") and Count III for discrimination in violation of Section 504 of the Rehabilitation Act of 1973 ("RA"). Plaintiffs bring both claims against both Defendants, the District and Caschera.[50]

Preliminarily, both claims will be dismissed against Caschera, as neither claim is available for individual defendants.[51] To the extent that claims are asserted against Caschera in his official capacity, such claims are duplicative of those against the school: "'when a suit against individual defendants would be duplicative of those against a government entity, which is also sued, the claims against the individuals

Pennsylvania Constitution."); *Jones v. City of Phila.*, 890 A.2d 1188, 1208 (Pa. Commw. 2006).

Plaintiffs cite and rely on cases interpreting the Pennsylvania Constitution's prohibition on unreasonable search and seizure in the criminal context. Doc. 40 at 25-26 (citing *New Jersey v. T.L.O.*, 468 U.S. 325, 355 (1985)). While true that Pennsylvania's Constitutional right to be free from unreasonable search and seizure mirrors the federal right enshrined in the Fourth Amendment, without a cause of action Plaintiffs may not bring a civil suit to enforce such right.

50 Doc. 34 at Counts II-III.

51 It is well established that RA claims are not available for individual defendants. *See Emerson v. Thiel College*, 296 F.3d 184, 189-190 (3d Cir. 2002). Individual liability under the ADA is less clear, but a weighty consensus of persuasive authority from the Third Circuit and District Courts suggest that ADA claims are not cognizable against individuals. *See, e.g., Kokinda v. Pa. Dept. of Corr.*, 779 F. App'x 938, 942 (3d Cir. 2019); *Snider v. Pa. DOC*, 505 F. Supp. 3d 360, 405-06 (M.D. Pa. 2020) ("Individuals are not liable under Title II [of the ADA] or the Rehabilitation Act."); *Scott v. Pa. Dept. of Corr.*, 2024 WL 1916725, at *4 (M.D. Pa. May 1, 2024) (collecting cases).

should be dismissed as the government entity is the real party in interest.'"[52] Accordingly, all claims against Caschera under the ADA and RA are dismissed with prejudice.

Turning to the substance of the ADA and RA claims against the District, "Title II of the ADA provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity.'"[53] Similarly, Section 504 of the RA provides that "'[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.'"[54] "Thus, to state a claim under Title II of the ADA, plaintiffs must demonstrate that: (1) they are qualified individuals; (2) with a disability; and (3) they were excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or were subjected to discrimination by any such entity; (4) by reason of their disability."[55]

---

52 *Price v. Commw. Charter Acad. Cyber Sch.*, 2018 WL 1693352, at *5 (E.D. Pa. Apr. 6, 2018) (quoting *Blunt v. Lower Merion Sch. Dist.*, 559 F. Supp. 2d 548, 568 (E.D. Pa. 2009)) (dismissing ADA and RA claims brought in official capacity against an individual defendant where they were also asserted against the school district).

53 *Durham v. Kelley*, 82 F.4th 217, 225 (3d Cir. 2023) (quoting 42 U.S.C. § 12132).

54 *Beam v. Western Wayne Sch. Dist.*, 165 F. Supp. 3d 200, 209 (M.D. Pa. 2016) (quoting 29 U.S.C. § 794(a)).

55 *Durham*, 82 F.4th at 225.

The difference between the claims rests in the causation element: "under the RA, the disability must be the sole cause of the discriminatory action, while the ADA only requires but-for causation."[56]Additionally, "[w]here compensatory damages are sought, a plaintiff must also show intentional discrimination under a deliberate indifference standard."[57]

Moreover, claims under the ADA or RA are intertwined with the Individuals with Disabilities Education Act ("IDEA").[58] "Congress enacted the IDEA to 'ensure that all children with disabilities have available to them a free appropriate public education [("FAPE")] that emphasizes special education and related services designed to meet their unique needs.'"[59] The IDEA provides parents with an avenue to sue where they believe the school has not fulfilled its statutory obligations to provide the student with a FAPE.[60] However, to bring a claim under IDEA, plaintiffs must first exhaust the IDEA's administrative process.[61] This is relevant here because the Supreme Court and Third Circuit have clarified that "if 'a lawsuit seeks relief for the denial of a [FAPE]' —which is 'the only "relief" the IDEA makes "available"'—

---

56 *Id.*
57 *Id.*
58 *S.D. by A.D. v. Haddon Heights Bd. of Educ.*, 722 F. App'x 119, 125-127 (3d Cir. 2018); *Wellman v. Butler Area Sch. Dist.*, 877 F. 3d 125, 131-32 (3d Cir. 2017).
59 *S.D. by A.D.*, 722 F. App'x at 124 (quoting 20 U.S.C. § 1400(d)(1)(A)).
60 *Id.* at 125.
61 *Id.*

a 'plaintiff cannot escape § 1415(l) merely by bringing her suit under a statute other than the IDEA,'" such as the ADA or RA.[62]

"'[I]n determining whether a suit indeed "seeks" relief for [the denial of a FAPE], a court should look to the substance, or gravamen, of the plaintiff's complaint.'"[63] For this analysis, the Supreme Court has instructed courts to consider whether the plaintiff could have brought "essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library" and, second, whether "an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance."[64] When those inquiries are answered negatively, the gravamen of the complaint is likely the denial of a FAPE, and the IDEA requirements apply.[65]

Here, Plaintiffs' ADA and RA claims fail to plead exhaustion of administrative remedies and also fail to adequately plead causation. Either deficiency would require dismissal. First, the gravamen of these claims is essentially the denial of a FAPE for N.W. based on Caschera's conduct. Were Caschera not N.W.'s teacher, Plaintiffs could not have brought such claims; it is the specific nature of the classroom and the alleged deprivation of fair access to education for N.W. which underlies Plaintiffs' complaint. This is especially true for the allegations that

---

62 *Id.* at 125 (quoting *Fry v. Napoleon Comm. Schs.*, 580 U.S. 154, 168 (2017)).
63 *Wellman*, 877 F.3d at 131 (quoting *Fry*, 580 U.S. at 165).
64 *Fry*, 580 U.S. at 171.
65 *Id.*

N.W. was forced to take a test in violation of his 504 plan.[66] Given that the claims' gravamen is the denial of a FAPE, Plaintiffs needed to meet and plead exhaustion of administrative remedies under the IDEA.[67] As Plaintiffs have included no allegations relating to the exhaustion of administrative remedies, Plaintiffs' claims under the ADA and RA must be dismissed.

Additionally, regardless of the exhaustion requirement, Plaintiffs' pleadings fail to establish plausible causation for either claim. The ADA's lower causation standard requires N.W.'s disability be a but-for cause of differential treatment.[68] Plaintiffs have alleged only that N.W. had a qualifying mental disability and that Caschera treated him differently than other students in the class; without more, the fact of differential treatment does not itself raise an inference of causation.[69]

---

66 Doc. 34 at ¶¶ 89(d), (e), 103. It is less clear whether Caschera's actions in placing smelling salts under N.W.'s nose and strapping him to a backboard would be considered seeking remedy for denial of a FAPE. *See Wellman*, 877 F.3d 125, 133 (3d Cir.) (noting that a student who "happened to be physically assaulted on the bus going to school" would not be seeking FAPE remediation, and citing a case for the proposition that discrimination "for no educational purpose is a form of discrimination similar to the type that could be brought by an institutionalized adult") (citing *J.S. III v. Houston Cty. Bd. of Educ.*, 877 F.3d 979, 986-87 (11th Cir. 2017)). However, given that Plaintiffs' own pleadings describe the conduct at issue as "depriv[ing] Plaintiff N.W. of the benefits of his educational program on the basis of his disability," the complaint's gravamen appears to be denial of a FAPE. Doc. 34 at ¶ 102. Regardless, because the claims are so clearly deficient on the elements of causation, the Court need not press the issue in depth.

67 *Wellman*, 877 F.3d at 131.

68 *Durham*, 82 F.4th at 226.

69 *See supra*, note 44, *see also Perry v. Faddis*, 2022 WL 17340472, at *7 (E.D. Pa. Nov. 30, 2022); *cf Decker v. Dept. of Corr.*, 2026 WL 115001, at *3 (3d Cir. Jan. 15, 2026) (where statements that a plaintiff's halfway-house placement had been made difficult because of his medical conditions were sufficient to meet the causation standard). Plaintiffs plead no such circumstances tending to show intentional discrimination here.

Plaintiffs would need to plead some facts rendering the existence of a causal link between N.W.'s disability and Defendants' actions[70] plausible.[71] They have not done so, and, therefore, neither the ADA's lower standard nor the RA's higher standard are met. Defendants' motion to dismiss is accordingly granted, and Plaintiffs' Counts II and III are dismissed with prejudice.

---

Plaintiffs' allegations that the alleged assault came about as a punishment for N.W. putting his head down in class also do not render this a plausible claim. An attenuated chain could be reasonably inferred as N.W.'s disability led to him putting his head down in class which led to the punishment. However, other cases addressing similar issues have not found such a chain of inferences to be sufficient. *See Mercer v. Southeastern Pa. Trans. Auth.*, 26 F. Supp. 3d 432, 444 (E.D. Pa. 2014) (where the plaintiff claimed harassment due to weight, and that his weight was caused in part by his underlying disability of diabetes, the causal chain did not support an ADA claim because plaintiff presented no evidence that the defendant viewed the weight and the disability as related); *see also Itiowe v. NBCUniversal Inc.*, 2013 WL 5435487, at *4 (D.N.J. Sept. 27, 2013). That is to say, the discrimination must come about as a result of the disability itself, not solely its symptoms or manifestations.

70 There is conflicting authority regarding whether the District may be held vicariously liable for Caschera's conduct under the ADA and RA. *See, e.g., Bentler v. Nederostek*, 2026 WL 1195610, at *20 (M.D. Pa. May 1, 2026) (collecting cases for the proposition that vicarious liability is available under the ADA); *but see Jones v. City of Detroit, Michigan*, 20 F.4th 1117, 1120 (6th Cir. 2021) (holding that "[w]hether Title II imposes vicarious liability rises and falls with whether Title VI does" and analyzing circuit authority to conclude that Title VI does not allow for vicarious liability); *Moore*, 471 F. Supp. at 656; *Williams v. Jersey Shore Area Sch. Dist.*, 673 F. Supp. 3d 688, 699 (M.D. Pa. 2023) (Brann, J.); *Swisher v. Jersey Shore Area Sch. Dist. Bd. of Directors*, 2023 WL 3396579, at *11 (M.D. Pa. May 11, 2023) (Brann, J.); *Ingram v. Kubik*, 30 F.4th 1241, 1258 (11th Cir. 2022) ("Vicarious liability is unavailable under Title VI.") Regardless, Plaintiffs have not pled conduct by either actor, the District or Caschera, giving rise to a plausible discrimination claim.

71 For instance, a "[a] plaintiff can meet the fourth element of a prima facie case—discrimination 'by reason of his disability'—by showing invidious discrimination or a failure to provide reasonable accommodations." *Montanez v. Price*, 154 F. 4th 127, 148 (3d Cir. 2025). Plaintiffs here have pled neither, nor any other facts tending to show Caschera's actions were motivated by N.W.'s disability.

### 4. Claims Under the Civil Rights Act of 1964 – Count V

Next, Plaintiffs have added a claim for improper racial discrimination under Title VI of the Civil Rights Act of 1964 ("Title VI").[72] Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[73] "To state a claim of racial discrimination under Title VI, a plaintiffs must allege (1) 'there is racial or national origin discrimination' and (2) 'the entity engaging in discrimination is receiving federal financial assistance.'"[74] "Title VI 'prohibits only intentional discrimination[;]' '[f]unding recipients are properly held liable in damages only where they are deliberately indifferent to [ ] harassment, of which they have actual knowledge.'"[75] "School administrators act with deliberate indifference 'only where the [school's] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'"[76]

---

72 Doc. 34 at Count V. Title VI does not provide for individual liability, so Plaintiffs bring Count V only against the District. *See Whitfield v. Notre Dame Middle Sch.*, 412 F. App'x 517, 521 (3d Cir. 2011).

73 42 U.S.C. § 2000(d)

74 *Swisher v. Jersey Shore Area Sch. Dist. Bd. of Directors*, 2023 WL 3396579, at *11 (M.D. Pa. May 11, 2023) (Brann, J.) (quoting *Moore v. Solanco Sch. Dist.*, 471 F. Supp. 3d 640, 655 (E.D. Pa. 2020)).

75 *Moore*, 471 F. Supp. 3d at 656 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001) and *Blunt v. Lower Merion Sch. Dist.*, 826 F. Supp. 2d 749, 761 (E.D. Pa. 2011)); *Williams v. Jersey Shore Area Sch. Dist.*, 673 F. Supp. 3d 688, 699 (M.D. Pa. 2023) (Brann, J.).

76 *Bridges ex rel. D.B. v. Scranton Sch. Dist.*, 66 F. Supp. 3d 570, 590 (M.D. Pa. 2014).

Plaintiffs have not pled that there was plausibly racial discrimination here, nor that the District was deliberately indifferent to any such discrimination. First, for largely the reasons stated above in regard to Plaintiffs' Equal Protection § 1983 claim, Plaintiffs have not pled any facts to suggest that N.W. experienced racial discrimination. Plaintiffs have not pled any similarly situated white students who put their head down in class and who were not punished in the same way as N.W.[77] Moreover, even if the other students in class could be considered similarly situated, the mere fact of differential treatment alone is not sufficient to raise an inference of discrimination.[78]

Additionally, as there is no vicarious liability under Title VI,[79] Plaintiffs needed to plead actions on behalf of the District, not merely Caschera, tending to show deliberate indifference to known acts of harassment.[80] Plaintiffs have not done so at this time. "To establish intentional discrimination by deliberate indifference in a school harassment context, a plaintiff must show that (1) the defendant had

---

77 *See supra*, note 42.

78 *See supra*, note 44; *Lynn*, 2026 WL 1945752, at *3; *Williams v. Pennridge Sch. Dist.*, 782 F. App'x 120, 127 (3d Cir. 2019) ("[A]s we have repeatedly held, evidence of disparate treatment, alone, is insufficient to establish discriminatory intent.").

79 *See Williams v. Jersey Shore Area Sch. Dist.*, 673 F. Supp. 3d 688, 699 (M.D. Pa. 2023) (Brann, J.); *Moore v. Solanco Sch. Dist.*, 471 F. Supp. 3d 640, 656 (E.D. Pa. 2020); *see also Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 285-86 (1988) (analyzing a Title IX claim, the interpretation of which is consistently applied congruently to Title VI claims); *Ingram v. Kubik*, 30 F.4th 1241, 1258 (11th Cir. 2022) ("Vicarious liability is unavailable under Title VI."); *Jones v. City of Detroit*, 20 F.4th 1117, 1121-22 (6th Cir. 2021) (analyzing circuit authority and concluding that Title VI does not allow for vicarious liability, as "the target of the recovery must be the perpetrators themselves.").

80 *Whitfield*, 412 F. App'x at 521.

substantial control over the harassers, (2) [the plaintiff] suffered severe and discriminatory harassment, (3) the defendant had actual knowledge of the harassment, and (4) the defendant failed to correct the harassment."[81] Plaintiffs have failed to plead that N.W. suffered discriminatory harassment, as there is no evidence that N.W. was treated differently on the basis of race. Moreover, as there was only one incident, Plaintiffs have not shown any discrimination or harassment was "severe or pervasive."[82] Finally, Plaintiffs have not pled that the District failed to correct known harassment, as it is unclear whether N.W. reported the incident as harassment, and as the District immediately scheduled meetings regarding the incident upon its reporting.[83]

In sum, Plaintiffs' complaint does not establish that N.W. was subject to harassment based on his race, that any harassment was severe, that the District was aware any harassment occurred, nor that the District failed to correct the harassment.

---

81 *Williams v. Pennridge Sch. Dist.*, 782 F. App'x 120, 127 (3d Cir. 2019); *Bridges*, 66 F. Supp. 3d at 589-591 (applying the same standard for acts by teachers); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 285 (1998) (applying same standard for teacher sexual harassment under Title IX);

82 *Cf L.L. v. Evesham Twp. Bd. of Educ.*, 710 F. App'x 545 at 549 (where one use of the "n-word" was sufficiently severe racial discrimination).

83 Doc. 34 at ¶¶ 41, 42, 52. Plaintiffs' claim rests on the assertion that Defendant's attempts to justify the prior harassment give rise to deliberate indifference by the District. Not so. Plaintiffs' pleading indicates that the District immediately took steps to resolve the issue and that no such other instance occurred. Moreover, even if the District was deliberately indifferent to the fact that the incident occurred, it would not support a finding that the District was deliberately indifferent to the likelihood that such an incident would have occurred in the first place when there was no reason for the District to know Caschera would act in such a way.

Plaintiffs' Title VI claim fails on nearly every requirement. Defendants' motion to dismiss Count V is granted with prejudice.

### 5. IIED – Count VIII

Plaintiffs also replead an Intentional Infliction of Emotional Distress ("IIED") claim against Caschera. To make out an IIED claim, a plaintiff must plead "(1) extreme and outrageous conduct, (2) which is intentional or reckless; (3) it must cause emotional distress, and (4) that distress must be severe."[84] "To establish a claim for IIED, 'the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'"[85] "The Pennsylvania Superior Court has held that for conduct to rise to the level of outrageousness necessary for an IIED claim it must be such that 'the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"[86] Additionally, under Pennsylvania law, a plaintiff must allege some type of resulting physical harm due to the severe emotional distress incurred from the defendant's conduct.[87]

---

84 *L.H. v. Pittston Area Sch. Dist.*, 130 F. Supp. 3d 918, 927 (M.D. Pa. 2015).
85 *Id.* (quoting *Hoy v. Angelone*, 554 Pa. 134 (1998)).
86 *Id.* (quoting *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987 (Pa. Super. Ct. 1997)).
87 *Fulton v. United States*, 198 F. App'x 210, 215 (3d Cir. 2006); *Davis v. Wigen*, 82 F.4th 204, 216 (3d Cir. 2023); *Reedy v. Evanson*, 615 F.3d 197, 232 (3d Cir. 2010).

In my prior Memorandum Opinion, I dismissed this claim for failure to show physical harm resulted from severe emotional distress.[88] In the second amended complaint, Plaintiffs added language highlighting that N.W. was strapped to the backboard in a way such that the "strap of the backboard was placed around his neck, compromising his ability to breathe, and therefore, suffering physical injuries."[89] Plaintiffs have also added to the second amended complaint paragraphs indicating that N.W. experienced physical manifestations of his emotional distress, including "somatic symptoms such as involuntary tremors, a persistent lump in his throat, and stomach discomfort."[90] It is these physical manifestations, as opposed to the strap touching his throat during the incident, that allow Plaintiffs' IIED claim to proceed under the physical manifestation requirement.[91]

---

88 Doc. 32 at 24-25.

89 Doc. 34 at ¶ 147.

90 Doc. 34 at ¶¶ 64-66. Curiously, Plaintiffs made no mention of these paragraphs in the section of specific factual averments relevant to IIED nor in their brief. Yet, as these allegations are in the complaint, the Court considers them in accordance with the liberal pleading philosophy.

91 Plaintiffs focus their argument on the fact that N.W.'s throat was touched by the strap and, in briefing, ignore entirely their new pleadings of N.W.'s physical symptoms. That the strap touched N.W.'s throat alone would likely be insufficient to render this claim cognizable. *See Fulton v. United States*, 198 F. App'x 210, 215 (3d Cir. 2006) (noting that IIED "requires a manifestation of physical impairment *resulting from the distress*."). As the Court understands it, IIED requires outrageous conduct which causes emotional distress which, in turn, causes physical manifestations or harm. *Id.*

In *Kazatsky v. King David Memorial Park*, the Pennsylvania Supreme Court held that plaintiffs seeking recovery for IIED must present medical evidence of emotional distress. 515 Pa. 183, 197-98 (1987). In doing so, the Court's opinion adopted the language of the Restatement (Second) of Torts § 46(1), which sets out the definition of IIED to be "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Id. at 190, 198 (Larsen, J., concurring and noting that the majority has implicitly adopted § 46 of the Restatement). This language implies that IIED claims are

As to the other elements, Plaintiffs' pleadings plausibly establish an IIED claim. A teacher strapping a student to a medical backboard and forcing them to so remain in front of a classroom of their peers could be sufficient to meet the standard of outrageous conduct for an IIED claim. This is especially so if N.W.'s ability to breathe was actually compromised, as Plaintiffs have pled. From the pleadings, it can be reasonably inferred that Caschera had knowledge "that severe emotional distress [was] substantially certain to be produced by his conduct,"[92] as Plaintiffs have alleged that Caschera's actions were a form of punishment for N.W. putting his head down on his desk.

Defendants argue a different characterization of Caschera's actions, asserting that it was a part of a classroom exercise.[93] However, at this stage, the Court must

---

intended to address injury resulting from the emotional distress rather than separate physical impact.

Requiring a causal link between emotional distress and physical harm comports with the relationship between IIED claims and other intentional torts; IIED is meant to address specific situations where purely emotional harm is cognizable in an exception to the general rule. Plaintiffs' interpretation would render such IIED claims duplicative of battery claims, where emotional damages are already recoverable for physical impact. While not yet adopted by Pennsylvania, the Restatement (Third) of Torts § 46 clarifies and addresses this very issue, changing the language for IIED to be that "[a]n actor who by extreme and outrageous conduct intentionally or recklessly causes severe emotional harm to another is subject to liability for that emotional harm and, *if the emotional harm causes bodily harm*, also for the bodily harm." The Restatement (Third) describes this tort as "a catchall to permit recovery in the narrow instance when an actor's conduct exceeded all permissible bounds of a civilized society but an existing tort claim was unavailable, and notes that "[IIED] applies to emotional harm to a person that is not itself caused by bodily harm to that person." See Comments (a), (b).

Regardless, Plaintiffs here added paragraphs that indicate N.W. experienced some physical manifestations of his distress, even if Plaintiffs do not so argue in their brief.

92 *L.H.*, 130 F.Supp.3d at 927.

93 Doc. 38 at 34-35.

take Plaintiffs' allegations and characterizations as true. It may be that discovery provides context for Caschera's actions and the claim falls short. Regardless, Plaintiffs have pled sufficient facts to render it plausible that discovery will reveal a cognizable IIED claim. Accordingly, Defendants' motion to dismiss is denied for Count VIII.

### 6. Punitive Damages

Next, Defendants move to dismiss Plaintiffs' claims for punitive damages on their remaining claims. Defendants' sole argument for this issue is that Plaintiffs have not pled that Caschera acted sufficiently "outrageously" to justify an award of punitive damages.[94] I disagree. "Punitive damages are awarded to punish a person and/or entity for 'outrageous conduct' . . . . Conduct is considered 'outrageous' where a defendant's actions shows either 'an evil motive or reckless indifference to the rights of others.'"[95] Plaintiffs have pled that Caschera, in front of a room full of N.W.'s peers, ordered N.W. to be strapped to a medical backboard and left to stand in front of the class.[96] Given these statements, it is certainly plausible that a reasonable factfinder could determine Caschera acted outrageously. Accordingly, I

---

94 Doc. 38 at 37-39. Punitive damages appear to be available for Plaintiffs' remaining claims against Caschera. *See Allah v. Al-Hafeez*, 226 F.3d 247, 251-52 (3d Cir. 2000); *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1277 (3d Cir. 1979).

95 *Lomas v. Kravitz*, 130 A.3d 107, 128 (Pa. Super. Ct. 2015).

96 Doc. 34 at ¶¶ 28-32.

will deny Defendants' motion to dismiss Plaintiffs' punitive damages claims for the remaining Counts.

### 7. Parent Plaintiffs' Claims

Finally, Defendants move to dismiss Dr. Carol Woods and Dr. Nathanial Woods ("Parent Plaintiffs") as plaintiffs.[97] Defendants assert that Parent Plaintiffs have not established a personalized injury to them, so their individual claims should be dismissed, and that, since N.W. has reached majority status, his claims no longer need be asserted by his guardians on his behalf.[98]

Preliminarily, it is unclear which, if any, claims are actually brought against Defendants by Parent Plaintiffs in their individual, as opposed to representative, capacity.[99] None of the claims specifically assert individual claims by Parent Plaintiffs: Counts I, II, III, and V list the claims as "Plaintiff N.W. v. Defendants" while Counts IV, VI, VII, VIII, and IX list the claims as "Plaintiffs Dr. Carol Woods and Dr. Nathaniel Woods Jr. *on behalf of Plaintiff N.W.* vs. Defendants."[100] None of the claims indicate that Parent Plaintiffs are pursuing them in their individual capacities. Nevertheless, the Court will construe those surviving claims which list Parent Plaintiffs as being brought in Parent Plaintiffs' individual capacities, Counts IV, VI, VII, and IX. No other claims sufficiently plead individual claims by Parent

97 Doc. 38 at 39-40; Doc. 42 at 13-15.
98 Doc. 38 at 39-40.
99 Doc. 34 at Counts I-IX.
100 *Id.*

Plaintiffs; to the extent Plaintiffs construe such claims as doing so, those individual claims would be dismissed.

From the counts which the Court will construe as asserting individual capacity claims by Parent Plaintiffs, the only surviving claims are Counts VII, VIII, and IX, for battery, IIED, and false imprisonment under Pennsylvania state tort law. For these claims, Defendants argue that Plaintiffs have not adequately pled that Parent Plaintiffs incurred medical expenses on behalf of N.W. to give them standing to sue.[101] In the second amended complaint, Plaintiffs plead that Plaintiff N.W. has been "formally diagnosed with adjustment disorder with anxiety following the aforementioned events" and that he must "undergo regular and consistent counseling sessions" regarding the incident.[102] It is reasonable to infer that Parent Plaintiffs would have been the ones financially supporting such measures, therefore rendering it plausible that Parent Plaintiffs expended the medical expenses claimed as injuries. Accordingly, Defendant's motion to dismiss Parent Plaintiffs' individual claims in Counts VII, VIII, and IX are denied.

Additionally, Defendants argue that Parent Plaintiffs' representative claims on behalf of N.W. should be dismissed as he has now reached the age of majority. Federal Rule of Civil Procedure 17(c) allows for a guardian to sue on behalf of a

---

101 Doc. 42 at 14-15. Defendants do not argue that Parent Plaintiffs are not legally entitled to sue if they had adequately pled medical expenses, arguing only that they did not plead any medical expenses incurred. Accordingly, I do not address that issue here.

102 Doc. 34 at ¶¶ 64-66.

minor.[103] Neither party addresses whether the Court *must* dismiss suits brought on behalf of a minor once the minor reaches majority. Accordingly, the Court will decline to dismiss Parent Plaintiffs' claims brought on behalf of N.W. at this time, and parties should address the issue at further stages with appropriate legal authority.[104]

## III. CONCLUSION

Defendants' partial motion to dismiss pursuant to Rule 12(b)(6) is granted in part: Counts II-VI are dismissed with prejudice in their entirety and Count I is dismissed with prejudice against the District. The remaining counts are therefore Counts I and VII-IX, against Caschera only.

Leave to amend is denied. "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."[105] A complaint is "futile" if even, as amended, it would fail to state a claim upon which relief could be granted.[106] Although there is a "liberal pleading philosophy of the federal rules" no amendment will be permitted because another opportunity to plead a case would be futile.[107] Plaintiffs have been given multiple attempts to amend,

---

[103] FED. R. CIV. P. 17.

[104] Plaintiffs' brief in opposition argues that "while Plaintiff N.W. is still a minor, Parent Plaintiffs have standing to bring forth claims against Defendants." Doc. 40 at 36. Accordingly, Plaintiffs may agree to dismiss Parent Plaintiffs' claims brought on behalf of N.W. and the issue will be mooted. If not, then parties should address the issue at a later stage with appropriate supporting authority.

[105] *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).

[106] *Id.*

[107] *See Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008).

filing first a complaint, then an amended complaint, and now a second amended complaint. In my prior Memorandum Opinion, I noted that there would be no further leave to amend given;[108] Plaintiffs were therefore on notice that this was their final opportunity to bring their claims up to muster. Accordingly, it is clear that any further opportunity to amend would be futile. It is now time for this case to proceed.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

[108] Doc. 32 at 27.